Thank you. Good morning. I'm Tanya Morrow. I'm from the Federal Defender's Office in Medford, Oregon. May it please the Court. In Mr. Roe's case, the District Court found that the prosecutor improperly commented on his pre-arrest silence. That finding is entitled to deference, and it should stand unless it's clearly erroneous. A review of the record at pages 279 and 414 through 416, which relates the cross-examination questions of the prosecutor and the closing arguments, support the District Court's finding. So the issue in this case is whether or not the District Court's legal conclusions that the constitutional violation was not harmless should be reversed. As stated in the brief, Mr. Roe's entire defense was based upon the jury believing his testimony that he didn't know what his co-defendant, Mr. Villars, was doing. The State was required to prove that Mr. Roe stayed of mind, that he intended to aid Mr. Villars' offense conduct. That's provided by Oregon law, by revised statute section 161.155. The State had to prove that he knew, Mr. Roe knew, that his co-defendant was shooting at the victim's truck, and he specifically testified that he didn't know that Mr. Villars was shooting at the victim's truck. So the prosecutor's comments on the post-arrest silence were harmful for precisely the reasons that they're inadmissible. They directly inferred guilt based on Mr. Roe's failure to say anything that is arrest. The comments were the principal means for which the State, the principal means the State employed in order to meet its burden of proof on aiding and abetting theory. Because his credibility was central to his defense, the questions and comments met the Brecht standard. They were substantially, they had a substantial and injurious effect on the jury's verdict. The, just to briefly touch upon the district court's factual findings as to the other evidence against the petition. And just to remind the court, there's at least three factors to consider here. The first two are the extent of the questions and the comments. The third issue is what was the remaining evidence if we exclude the comments on silence. And. Well, you know, we have to say, we have to play the Brecht standard. That's correct. Even if we agree, you know, that there was a constitutional violation. In order to get a new. That's correct. In order to get habeas relief, you have to go to Brecht. And I guess that's what you're trying to argue is that here there was an injurious effect on the jury's verdict. There was. But, you know, that's pretty hard to say with respect to this particular claim in light of all the evidence that was presented. Well, I disagree. I think if we look at what the magistrate's findings were on that issue, there's only one relevant finding, which was that. And it begged the question, actually. The court stated that Mr. Rowe was implausible when he claimed he didn't hear the gunshots. Other than that, the magistrate really just pointed to the fact that Mr. Rowe had admitted the misdemeanor conduct which occurred at the campsite before the pursuit. And there was. He didn't. He took the stand and admitted that conduct. So, in fact, the fact that he admitted it suggests that his contrary testimony and failure to admit the felonious conduct regarding the pursuit was actually more trustworthy. He was credible on that. So, as mentioned, there is. There really is nothing in the district court's findings that suggests that there was overwhelming evidence. Well, let me just. I appreciate your argument. I mean, I only speak for myself. But I think the first argument is probably a little bit difficult. I am a little bit more interested in the second argument that you advance, or ineffective assistance of counsel, with respect to the questioning, or failure to object to the leading questions of the prosecutor regarding, what was it, the assault? Yes. Under Oregon law, the state can prove the physical injury necessary for the assault in two ways. One is to actually describe the injury itself. The other way is to describe the injury by way of the physical pain that the victim suffered. In this case, the prosecution believed its best and strongest case was to try to get the victim to explain that his pain was substantial. And, of course, as we saw, and as the district court correctly found, counsel was ineffective when he failed to object to those leading questions. There was prejudice. I thought that that standard, though, was disjunctive, that the assault could be made out if there was substantial pain or if there was, and I'm forgetting the exact language of the statute, but something like, something that had an effect on him. Well, let me help you out. Under Oregon law at the time, the state could have attempted to prove that the injury occurred because it included an abrasion, bruising, and swelling. And that's what the magistrate judge decides. Well, I don't care that the state decided that it couldn't prove that. But what is the exact language of the statute? It says substantial pain or what? Is it substantial injury, physical injury? I believe it is substantial physical injury. Essentially, by case law, the Oregon courts have defined what it takes in order to meet that burden. And in this case, well, what it takes is three things. Here I understand that in recounting the story, this injured party said, a little pain wasn't going to stop me. And he used the phrase a little pain. And then the prosecutor kind of led him to say it was substantial pain. However, it was a rock the size of a cantaloupe approximately, and he had an abrasion of three inches or more. And he also, I thought, gave express testimony that it was sore for days. No, he did not, Your Honor. Okay. No, he did not. The only testimony was the officer indicating that he saw an abrasion. The officer's report that the magistrate relies on, which the officer did not testify to, states that he saw a bruise. So that testimony wasn't in front of the jury. And then the judge also relies on the fact that there was a picture presented in which there was no description about whether or not that picture depicted a bruise or swelling. So the only evidence in front of the jury was that there was an abrasion. And under Oregon law, that is not enough to sustain a conviction. It looked like the prosecutor was trying to rely upon substantial pain. Yes. Given the scenario, the questioning that was taking place. And that was probably because the prosecutor believed he couldn't prove it through a description of the injury. And so the district court failed to apply the test here. Essentially, the district court was saying, well, if you retry the case, it's possible that the state might be able to prove that there was a bruise and swelling as well. That's an incorrect standard. Counsel, getting back to not the bruise issue but my concern about whether he said it was sore, I'm looking at language that I think is at 97 to 98 or thereabouts in the transcript where there's a question. And I know it's difficult to put this in the terms that the law requires, but physical injury means something that impairs your physical condition. Did the rock impair your physical condition for a while? And the answer is it was sore for a couple of days. Now, unlike the pain question, that question is not a leading question. When someone says, did it impair your physical condition? So why wouldn't it being sore for a couple of days, if I'm correct in that testimony, why wouldn't that be enough to satisfy? I believe the standard on Oregon law requires something more than soreness for a couple of days to constitute a physical impairment that satisfies the definition. What case says that? I'm going to, in a minute here, try to find that for you. So at the moment I'd like to reserve a little bit of time. That's fine. I just have one question. The photo that existed regarding the injury, why was that not submitted by the appellant to the federal court? The petitioner, it's the government's burden in the state of Oregon to prove the injury. And, well, I guess what your question is, is why didn't Mr. Roe submit it in his post-conviction case? In the federal court when he was trying to show prejudice. Right. Why wouldn't he have submitted the photograph, which would show prejudice if there were no injury by your argument? My recollection is that the state did not raise the alternative argument. It didn't come up until the district court that the state could approve its case through the other means, by describing the injury. So there was no need to prove that there was no question about the state's choice in its theory. But, counsel, even if you were trying to refute the argument that there was substantial pain, a photograph with an injury could raise an inference of whether or not such an injury would cause substantial pain or not. And it was the petitioner's burden to show prejudice. It's hard for, I think, any of us to speculate about that. And that's one of the objections I raised to the magistrate's reliance on it, is we don't know what the picture shows. Was that picture submitted to the jury? Yes. The only discussion about it is cited in the brief, and the officer doesn't really comment on it. He just identifies that it was a picture of the injury. Thank you. We'll give you two minutes for rebuttal. Since we're letting appellant go a couple of minutes over time, if you need an extra minute, you can take it, too. I appreciate that, Your Honor. David Thompson, appearing on behalf of Superintendent Bullock. With respect to the question of what Oregon law requires on physical injury, that was what was at issue with respect to the second degree assault charge. At Oregon revised statute 161.015, the definition of physical injury appears in subsection 7. And it reads specifically, physical injury means impairment of physical condition or substantial pain. So that is the definition that was at play in this case. And with respect to the ineffective assistance of counsel claim that petitioner has made here, what the district court relied on most heavily, and I think properly, was what the magistrate judge pointed out, is that there was a photograph here that was not part of the record in this case. And if, in fact, the petitioner is going to satisfy his burden with respect to a Strickland claim, you've got to show prejudice. And therefore, you would have to have, before the federal district court, all of the evidence that was in front of the jury to determine whether or not there was any prejudice that flowed from the alleged failure to object to leading questions. I think that focus is appropriate. That's precisely what the district court adopted out of the magistrate judge's findings and recommendation. And the magistrate judge cited an Oregon case in her memorandum, which said that physical injury suffered by the victim where he was hit with a container, which caused redness, swelling, and bruising. Now that may very well be exactly what that photograph showed to the jury. And that's why you can't, on this record, find that the petitioner has made out the prejudice prong of the Strickland test. And so for that reason alone, I think that this court ought to affirm the district court's ruling with respect to that. What kind of photo was it? Was it a black-and-white photo, a color photo, or what? Your Honor, I don't know. How big was the photo? I don't know. I don't know how big the photo was. A Polaroid photo? I don't know how big it was. I haven't seen the photo. You haven't seen the photo? I have not. I have not. Is there any Oregon precedent that would shed light on whether if someone was hit with a rock and it made them sore for a couple of days, that would be a physical impairment? There may be, Your Honor. I haven't looked for it. I didn't look for it in responding to the petitioner's argument here, because I felt that the district court, quite frankly, had it right that To rely on the photograph. the photograph, plus the testimony of the officer, Officer Lichty, who took the photograph, I believe, and observed the victim was enough, or at least theoretically enough, unless the petitioner shows otherwise. And that's precisely what Strickland requires. Strickland requires that the petitioner, as part of the two-prong test, show prejudice. That simply didn't occur here. So I don't think you really need to go looking for Oregon precedent, although it certainly would add something. The question is whether or not it's reasonably probable. Once you determine that there's been ineffective assistance at council, the first prong, then you ask is it reasonably probable that the outcome would have been any different on this particular count? Not that there was evidence that could have. The jury could have relied upon. The question is, is it reasonably probable. And that determination can't be made on this record in the absence of the photograph that was shown to the trial court jury. So it's the argument is that the process is that the petitioner fails to meet. There's some evidence there. We don't know what it was. And he should have produced it. And that's the problem with the way this case was constructed in the federal district court. You've got to show that that photograph, along with the officer's testimony, wasn't enough in itself without the responses to the allegedly leading questions to make out the state's case on the assault charge. Under, you know, the rules relating to federal habeas corpus proceedings that are attached in the Federal Rules of Criminal Procedure, when a petition is filed, if I'm not mistaken from my days on the district court, the state was required to file the entire record of the state court proceedings with the district court. Isn't that right? I believe that's correct, Your Honor. Now, was that done here? I believe it was done, but obviously this exhibit didn't make its way in. But nonetheless, you say it was? Nonetheless, it becomes the petitioner's burden. And if the petitioner does not make out that prong, and I'm not aware of any case law I haven't looked for it, quite frankly, but I'm not aware of any case law that says that if the government fails to produce the entire record as required by that rule, the petitioner then is in a position not to have to carry the burden with respect to this kind of thing, where you've got a photograph that obviously goes to the disclosure. Let me clarify one other thing. Is it in the argument before the jury at the end, was the argument physical impairment or substantial pain? You know, I don't recall exactly what the prosecutor focused on, but I did look at the instructions, and the instructions, I believe, laid out the statutory definition of physical injury. So that's what the jury was considering, and that's what's important. Let me ask one other thing. Does it make any difference here in the outcome of the sentence? This particular one. How did this particular count play in his overall sentence? I believe he got consecutives on all of his ‑‑ On this count. On this count. So it certainly would. It would make a difference. Yeah. It would make a difference. I agree. Now, with respect to the first issue, unless the Court has further questions on the second, I'll leave it to my brief as to what standards are to apply regarding that first question. But I will say this. There is some confusion, I think, in the district court's discussion of the Whitehead case. And it leads one to believe that the district court, in rejecting what the magistrate judge said about whether or not the references made by the prosecutor were completely to pre-Miranda silence as opposed to post-Miranda silence, it leads me to believe that the district court had in his head the notion that even if it was pre-Miranda but post-arrest you have a problem. That is not true. It's clear from Whitehead and from United States Supreme Court case law that post-arrest silence prior to a Miranda warning can be used for impeachment purposes. And this Court has held no differently. And Whitehead doesn't stand for any different proposition. What Whitehead stands for is this proposition, that post-arrest silence pre-Miranda cannot be used in the government's case in chief as substantive evidence of guilt. That's what that case stands for. And that case was, quite frankly, irrelevant to the discussion here because it's absolutely clear that the silence that the prosecutor commented on and that he elicited responses to from the petitioner was to pre-Miranda silence. But was it used for substantive evidence of guilt in this case? No, it wasn't. It was used for impeachment. That's what the prosecutor used it for. He said, you are hearing a story from the petitioner at trial that he never told to the police when the police contacted. That's impeachment. That's a little bit ambiguous. I have a question about the sequence of events when the car... Is it the Hartleys? The Brothers Hartley, yes. When their car got forced off the road, is there anything in the record about the sequence? How many times were tires blown out by the shooting? Or was there some other thing that forced it off the road? The record indicates that they stopped at one point in time and then took off again and then stopped again. And then the fight ensued between the Hartleys, Pozzola, and the petitioner. But when they stopped, how did that fit with the sequence of the shooting by Mr. Villars, of his rifle, which Mr. Rowe says he couldn't hear? I'm not sure that it's entirely clear, Your Honor. There is at least some suggestion that there were shots fired prior to the first stop that may have taken out at least one tire. But I'm not going to tell you that I know the record that well to answer that specific question. I was just wondering if the record would indicate that the driver of the pursuing vehicle would have to know that a rifle was shooting tires in the fleeing vehicle. I think what is clear is that the driver and the occupants of the Hartley vehicle heard a sound that was similar to air being released from a tire. Now, it's not clear that there is evidence that they specifically heard gunshots. I don't recall whether they testified to that, but they clearly saw both occupants of the petitioner's truck with barrels of guns out each window at one point in time. Well, thanks. I took you over your time, but having Ms. Morrow is going to go over her time, so that makes you guys even, I guess. All right. I appreciate that. Thank you. Thank you, Your Honors. I don't have a case site other than the case relied on by the magistrate, which was State X-Rail Juvenile Department v. Salomon, 83 ORAP 238. In that case, they conducted a survey of other authority, and in that, they indicate that they have previously found that it's not a physical injury where an abrasion that lasts a few days is the only cause of injury. So to that extent, the fact that it lasted a few days, and the fact that Mr. Pozzola said it caused him, he was sore a few days, I don't think it meets the test. So what the State needed to prove again was not only that there was an abrasion, which was the only evidence in the record besides the photograph, and we don't know whether the photograph showed any bruising or swelling. The State did not ask the officer to describe the injury beyond the testimony that he provided, which was that it was a scratch, and it was an abrasion. He argued to the jury that there was physical impairment? No, he did not. He argued to the jury. Actually, in closing, I'm not sure the prosecutor made too many references to the physical injury aspect of the case. The assault to sentence, Mr. Rose finished his sentence. What's important here is that these two constitutional violations, I believe, jeopardized his fair trial, and he had no prior felony convictions. So while it's true, we appreciate the fact that the court would find that there was prejudice, and agree with us that the district court failed to apply the appropriate stricken standard, which is that whether it was reasonably probable in that proceeding. I'm going to have to hold you to your time now, if you could finish your sentence. Thank you very much. Roe v. Pelec shall be submitted, and we thank counsel for their arguments.
judges: Gould, Paez, Rawlinson